# UNITED STATES DISTRICT COURT
# IN THE DISTRICT COURT OF NEBRASKA

| | |
|---|---|
| GREAT WEST CASUALTY COMPANY,<br><br>        Plaintiff,<br>v.<br><br>FFE TRANSPORTATION SERVICES, INC., FROZEN FOOD EXPRESS INDUSTRIES, INC., CONWELL CORPORATION and CONWELL, LLC,<br><br>        Defendants. | Case No. _____<br><br>**COMPLAINT** |

Great West Casualty Company, for its Complaint against Defendants herein, states and alleges as follows:

## PARTIES

1. Great West Casualty Company ("Great West") is a Nebraska corporation having its principal place of business in South Sioux City, Nebraska. Great West is a specialty insurer providing insurance products and services principally to members of the trucking industry.

2. Defendant FFE Transportation Services, Inc. ("FFE Transportation") is a Delaware corporation having its principal place of business in Dallas, Texas.

3. Defendant Frozen Food Express Industries, Inc. ("Frozen Food") is a Texas corporation having its principal place of business in Dallas, Texas.

4. Defendant Conwell Corporation is a Delaware corporation having its principal place of business in Dallas, Texas.

5. Defendant Conwell, LLC is a Delaware limited liability company having its principal place of business in Dallas, Texas.

6. Upon information and belief, Conwell, LLC transacts business in Texas under the name Conwell Transportation Services LLC.

4814-5082-2417.6

7. Upon information and belief, Defendant Conwell, LLC has one member. That member is Conwell Corporation, which is a Delaware corporation having its principal place of business in Dallas, Texas.

8. Defendants FFE Transportation, Frozen Food, Conwell Corporation and Conwell, LLC may be referred to collectively herein as "Defendants."

## JURISDICTION

9. Jurisdiction before this Court is appropriate pursuant to 28 U.S.C.A § 1332(a)(1) as the matter is a civil matter between citizens of different states having an amount in controversy, exclusive of interests and costs, exceeding $75,000.

## PERSONAL JURISDICTION OVER DEFENDANTS

10. Pursuant to the contracts at issue herein, Defendants agreed "Nebraska is the chosen venue for resolution of any disputes hereunder," and Defendants thus have consented to the exercise by this Court of personal jurisdiction over them. In this regard, Nebraska is a reasonably convenient place for trial, and the agreement to the place of action was not obtained by misrepresentation, duress, the abuse of economic power or other unconscionable means. In addition, alternatively, on information and belief, Defendants have sufficient minimum contacts with the State of Nebraska such that the exercise by this Court of jurisdiction over their persons would be consistent with principles of fairness and due process pursuant to the United States Constitution and Nebraska law.

## VENUE

11. Venue is appropriate in this District pursuant to 28 U.S.C.A. Section 1391(a)(2), as a substantial part of the events or omissions giving rise to Great West's claims occurred herein, and further pursuant to the consent of the parties hereto.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

**The Policies**

12. On or about January 1, 2011, Great West issued and delivered to Defendants Great West insurance policies WC25006A, WC25007A, WC25008A and WC25009A (individually a "Policy" and collectively the "Policies"). Pursuant to the Policies, Great West provided Defendants workers' compensation insurance for the calendar year 2011. Each of Policies WC25006A, WC25007A and WC25009A was issued with a deductible (self-insured retention) of $1,000,000. Policy WC25008A was issued with a deductible (self-insured retention) of $500,000.

13. Each Policy was issued with a "Deductible Endorsement." Pursuant to the Deductible Endorsement, Defendants, among other things, agreed to reimburse Great West, up to the deductible amount, any amounts Great West may advance to pay (i) claims on behalf of the Defendants per the Policies; and (ii) incurred loss adjustment expenses, if applicable, per Policies WC25006A, WC25007A, WC25008A and WC25009A.

**The Workers' Compensation Claims Service Agreements**

14. In conjunction with the issuance of the Policies, on or about January 1, 2011, Great West and Defendants executed and entered into two Workers' Compensation Claims Service and Establishment of Loss Trust Fund Agreements (the "Claims Service Agreements"), copies of which are attached hereto as Exhibit A and Exhibit B respectively.

15. One of the Claims Service Agreements (Exhibit A) pertained to Policies WC25006A, WC25008A and WC25009A. The other of the Claims Service Agreements (Exhibit B) pertained to Policy WC25007A.

16. Pursuant to paragraph 1 of the Claims Service Agreements, Great West agreed to act as Defendants' representative in the handling, investigation, and payment of claims as may be covered under the Policies.

17. Pursuant to paragraph 5 of the Claims Service Agreements, Defendants agreed, among other things, to establish and maintain a Loss Trust Fund to be placed on deposit and held by Great West to assure Great West would have sufficient funds to pay (i) claims on behalf of Defendants per the Policies; and (ii) incurred loss adjustment expenses per Policies WC25006A, WC25008A and WC25009A.

18. Pursuant to paragraph 5(a) of the Claims Service Agreements, the parties thereto established the initial deposit amount of the Loss Trust Fund to be $40,000.

19. Pursuant to paragraph 5(a) of the Claims Service Agreements, Defendants agreed to restore the Loss Trust Fund deposit to its original balance of $40,000 by the 20th day of each succeeding month if and to the extent Great West were to draw upon the Loss Trust Fund to pay (i) claims on behalf of the Defendants per the Policies; and (ii) incurred loss adjustment expenses per Policies WC25006A, WC25008A and WC25009A.

20. Pursuant to paragraph 5(b) of the Claims Service Agreements, Great West provided Defendants monthly a report of all unpaid claims and the reserves Great West established thereon, and a statement of payments Great West had made on Defendants' behalf per the Policies and the Claims Service Agreements.

21. Pursuant to the Claims Service Agreements and each monthly statement, Defendants were obligated to pay to Great West the billed statement amounts by the 20th day of the month following the date of the monthly statement.

4814-5082-2417.6

**The Workers' Compensation Collateral Agreements**

22.     Also in conjunction with the issuing and delivery of the Policies, on or about January 1, 2011, Great West and the Defendants executed and entered into three Workers' Compensation Collateral Agreements (the "Collateral Agreements"), true and correct copies of which are attached hereto as Exhibits C, D and E.

23.     One of the Collateral Agreements (Exhibit C) pertains to Policies WC25006A and WC25007A.  The second of the Collateral Agreements (Exhibit D) pertains to Policy WC25008A.  The third of the Collateral Agreements (Exhibit E) pertains to Policy WC25009A.

24.     Pursuant to paragraph 2 of the Collateral Agreements, Defendants agreed to defend, indemnify and hold harmless Great West with respect to any and all losses or claims of whatever kind arising out of each accident or occurrence to which the Policies may apply, to the extent of each Policy deductible.

25.     Pursuant to paragraph 5.1 of the Collateral Agreements, Defendants agreed to provide Great West collateral in the form of an irrevocable letter of credit, a certificate of deposit or some other form acceptable to Great West in an amount equaling or exceeding the amount of Defendants' "outstanding accumulated liabilities" as Great West may determine them to be.

26.     Paragraph 5.1 of the Collateral Agreements defines "outstanding accumulated liabilities" to mean "(a) all losses, loss adjustment expenses and other expenses which have been incurred by [Great West] in connection with a claim which has been made under the Policy; plus (b) the amount of reserves for anticipated loss payments, loss adjustment expense and other expenses which have been or are established by [Great West] in connection with claims under [the] Policy."

27. Pursuant to paragraph 5.1 of the Collateral Agreements, Defendants further agreed to increase the amount of collateral otherwise provided pursuant to said paragraph within ten days after receiving notice from Great West that such increase is required in order to meet Defendants' obligation to provide collateral with respect to Defendants' "outstanding accumulated liabilities" as Great West may determine them to be.

28. Great West, as an accommodation to Defendants, agreed that the required collateral could be provided on a "stepped up basis."

**The Letter of Credit**

29. Pursuant to paragraph 5.1 of the Collateral Agreements, on or about January 25, 2011, Defendants provided Great West an initial irrevocable letter of credit in favor of Great West in the amount of $175,000 (the "Letter of Credit") to collateralize Defendants' outstanding accumulated liabilities as Great West then determined them to be.

30. On or about April 7, 2011, Defendants provided Great West an irrevocable letter of credit in the amount of $350,000 (LOC # 68057941) which replaced the prior letter of credit and provided Great West additional collateral of $175,000.

31. On or about November 21, 2011, Defendants provided Great West an amendment to LOC #68057941 increasing the letter of credit amount by $175,000 to a new aggregate amount of $525,000.

32. On or about January 10, 2012, Defendants provided Great West a second amendment to LOC #68057941 increasing the letter of credit by $40,000 to a new aggregate total of $565,000.

33. Great West and Defendants agreed the second amendment to the Letter of Credit in the amount of $40,000 would satisfy Defendants' obligation per paragraph 5 of the Claims

Service Agreements (WC25006A, WC25008A and WC25009A) to establish and maintain a Loss Trust Fund.

34. Pursuant to paragraph 5.3 of the Collateral Agreements, Defendants provided Great West the right to draw on the letter of credit in the event Great West advanced funds within each Policy deductible or, among other occurrences, Defendants failed to provide increased collateral as Great West may require of Defendants to collateralize Defendants' "outstanding accumulated liabilities" as Great West may determine them to be.

**Breach of the Policies and Claims Service Agreements**

35. On or about September 26, 2012, and pursuant to the Policies and the Claims Service Agreements, Great West issued to Defendants a bill for the retained amount of each then unreimbursed loss Great West paid on behalf of Defendants per the Policies, and as to Policies WC25006A, WC25008A and WC25009A, loss claim expenses (the "September 26, 2012 Bill"). A true and correct copy of the September 26, 2012 Bill is attached hereto as Exhibit F.

36. The September 26, 2012 Bill included previously billed but unpaid losses Great West paid on behalf of Defendants in the amount of $38,886.83, plus $7,382.05 of loss and expenses Great West paid on behalf of Defendants in September 2012, the latter portion due to be paid on October 20, 2012, for a total billed amount of $46,268.88.

37. On or about October 31, 2012, and pursuant to the Policies and the Claims Service Agreements, Great West issued to Defendants a bill for the retained amount of each loss Great West paid on behalf of Defendants for Defendants' benefit per the Policies, and as to Policies WC25006A, WC25008A and WC25009A, loss claim expenses (the "October 31, 2012 Bill"). A true and correct copy of the October 31, 2012 Bill is attached hereto as Exhibit G.

38. The October 31, 2012 Bill included previously billed but unpaid losses Great West paid on behalf of Defendants in the amount of $46,268.88, plus $58,244.71 of loss and expenses Great West paid on behalf of Defendants in October 2012, the latter portion due to be paid on November 20, 2012, for a total billed amount of $104,513.59.

39. On or about November 26, 2012, Defendants paid $38,886.83 as billed in August 2012, leaving an outstanding total balance of $65.626.76 due per the September 30, 2012 Bill and the October 31, 2012 Bill.

40. On or about November 30, 2012, and pursuant to the Policies and the Claims Service Agreements, Great West issued to Defendants a bill for the retained amount of each loss Great West paid on behalf of Defendants for Defendants' benefit per the Policies, and as to Policies WC25006A, WC25008A and WC25009A, loss claim expenses (the "November 30, 2012 Bill"). A true and correct copy of the November 30, 2012 Bill is attached hereto as Exhibit H.

41. The November 30, 2012 Bill included previously billed but unpaid losses Great West paid on behalf of Defendants in the amount of $65,626.76, plus $24,171.45 of loss and expenses Great West paid on behalf of Defendants in November 2012, the latter portion due to be paid on December 20, 2012, for a total billed amount of $89,798.21.

42. Defendants have failed and refused to pay amounts due Great West per the September 26, 2012 Bill and the October 31, 2012 Bill in breach of the Claims Service Agreements and the terms of the Policies.

**Defendants' Breach of the Collateral Agreements**

43. By letter dated August 6, 2012, Great West made written demand of Defendants that Defendants provide additional collateral in the amount of $335,000 by increasing the amount

of the Letter of Credit to $1,000,000 to collateralize Defendants' "outstanding accumulated obligations" as Great West has determined them to be. A true and correct copy of Great West's August 6, 2012 letter is attached hereto as Exhibit I.

44. Notwithstanding Defendants' obligations per paragraph 5.1 of the Collateral Agreements, Defendants have failed and refused to provide the additional collateral.

**Great West's Draw on the Letter of Credit**

45. As a result of Defendants' breach of their obligations under the Policies, the Claims Service Agreements and the Collateral Agreements, by draft dated September 14, 2012, Great West drew on the Letter of Credit as was its right pursuant to paragraph 5.3 of the Collateral Agreements. Great West therefore holds $525,000 of cash collateral per paragraph 5.4 of the Collateral Agreements and $40,000 as a Loss Trust Fund pursuant to paragraph 5 of the Claims Service Agreements.

## FIRST CAUSE OF ACTION

**(Breach of Policies and Claims Service Agreements)**
**Damages**

46. Great West incorporates by reference the allegations of paragraphs 1 to 45 above as though fully stated herein.

47. Pursuant to the Policies and the Claims Service Agreements, Defendants are obligated to pay Great West amounts billed pursuant to the September 26, 2012 Bill and the October 31, 2012 Bill.

48. Despite demand, Defendants have failed and refused to pay Great West amounts billed pursuant to the September 26, 2012 Bill and the October 31, 2012 Bill.

9

49. As a result of Defendants' failure to pay amounts billed pursuant to the September 26, 2012 Bill and the October 31, 2012 Bill, Great West has been damaged in the amount of at least $65,626.76.

50. To the extent Defendants fail and refuse to pay additional amounts billed per the Policies and the Claims Service Agreements as they become due, including the additional amounts billed per the November 30, 2012 Bill and amounts that may be billed in the future, Great West will be damaged further and continually in an amount to be established at trial.

WHEREFORE, as to its First Cause of Action, Great West respectfully requests entry of a judgment in its favor and against the Defendants, and each of them, awarding Great West an amount not less than $65,626.76 as may be established at trial, its costs and attorneys' fees incurred herein and such further relief as the Court deems just.

## SECOND CAUSE OF ACTION

**(Breach of Collateral Agreements)**
**Specific Performance**

51. Great West incorporates by reference the allegations of paragraphs 1 to 45 above as though fully stated herein.

52. Pursuant to paragraph 2 of the Collateral Agreements, Defendants agreed to defend, indemnify and hold harmless Great West with respect to any and all losses or claims of whatever kind arising out of each accident or occurrence to which the Policies may apply, to the extent of each Policy deductible.

53. Pursuant to paragraph 5.1 of the Collateral Agreements, Defendants agreed to provide Great West collateral in the form of an irrevocable letter of credit, a certificate of deposit or some other form acceptable to Great West in an amount equaling or exceeding the amount of Defendants' "outstanding accumulated liabilities" as Great West may determine them to be.

54. Pursuant to paragraph 5.1 of the Collateral Agreements, Defendants further agreed to increase the amount of collateral otherwise provided pursuant to said paragraph within ten days after receiving notice from Great West that such increase is required in order to meet Defendants' obligation to provide collateral with respect to Defendants' "outstanding accumulated liabilities" as Great West may determine them to be.

55. By letter dated August 6, 2012, Great West made demand of Defendants that Defendants provide additional collateral in the amount of $335,000 by increasing the amount of the Letter of Credit to $1,000,000 to collateralize Defendants' "outstanding accumulated obligations" as Great West has determined them to be.

56. Great West has performed and continues to perform under the Policies and the Claims Service Agreements.

57. Great West has paid, pursuant to the Claims Service Agreements, (i) claims on behalf of Defendants per the Policies; and (ii) incurred loss adjustment expenses per Policies WC25006A, WC25008A and WC25009A within the deductibles the Policies provide.

58. Great West continues to receive and adjust claims asserted against the Defendants per the Policies, and therefore expects to continue to pay, pursuant to the Claims Service Agreements, (i) claims on behalf of Defendants per the Policies; and (ii) incurred loss adjustment expenses per Policies WC25006A, WC25008A and WC25009A within the deductible Policies provided in amounts that are neither liquidated nor ascertainable.

59. Great West's remedy at law is not adequate to protect Great West from the risks attendant to Defendants' failure to provide collateral to the level of Defendants' "outstanding accumulated obligations" as Great West has determined them to be.

4814-5082-2417.6

60. Great West is entitled to an order directing Defendants to specifically perform their obligation pursuant to paragraph 5.1 of the Collateral Agreements to increase the amount of collateral provided to collateralize Defendants' "outstanding accumulated obligations" as Great West has determined them to be.

WHEREFORE, as to Great West's Second Cause of Action, Great West respectfully requests the entry of an order directing Defendants, and each of them, to specifically perform their obligation to increase the amount of collateral provided to collateralize Defendants' "outstanding accumulated obligations" as Great West has determined them to be by providing Great West collateral in the form of an irrevocable letter of credit, a certificate of deposit or some other form of collateral acceptable to Great West in the amount of $335,000, and further awarding Great West its costs and attorneys' fees herein and whatever other relief the Court may deem just.

Dated this 11th day of December, 2012.

    GREAT WEST CASUALTY COMPANY,
    Plaintiff

By /s/ *Victoria H. Buter*
    Patrick B. Griffin #18072
    Victoria H. Buter #23841
    KUTAK ROCK LLP
    The Omaha Building
    1650 Farnam Street
    Omaha, NE  68102-2186
    Telephone: (402) 346-6000
    Facsimile:  (402) 346-1148
    patrick.griffin@kutakrock.com
    vicki.buter@kutakrock.com